156 So.2d 630

**SOUTHERN GUARANTY INSURANCE COMPANY**

v.

George GIPSON et al.

6 Div. 807.

Supreme Court of Alabama.

Sept. 26, 1963.

---

Olin W. Zeanah, Tuscaloosa, for appellant.

Ralph R. Williams and Dayton F. Hale, Tuscaloosa, for appellees Royster.

Jones, McEachin & Ormand, Tuscaloosa, for appellees Gipson.

PER CURIAM.

Appellant filed its petition in the equity division of the circuit court of Tuscaloosa County for a declaratory judgment on its alleged obligation contained in a liability insurance policy, issued to respondent George Gipson, to defend suits filed by Joyce Royster, a minor and her father Tommy Royster, against George and Clifford Gipson to collect damages arising from an automobile accident, and to pay any judgment and costs incident thereto in favor of said Tommy Royster and his minor daughter. The automobile was at the time being driven by Clifford Gipson, son of George Gipson, and allegedly resulting in personal injuries to the child and medical expenses to the father, Tommy Royster.

From a final decree of the trial court imposing upon appellant the duty to defend the suits for the insured George Gipson and his son, Clifford Gipson, and to pay any judgment and court costs that may be rendered or assessed against said George Gipson or his son, Clifford Gipson, a minor, or both, but subject to the limitations of the policy, petitioner, Southern Guaranty Insurance Company, appeals and here seeks to review this decree, contending by proper assignments that the decree was in error.

One issue of contention between the parties revolves around the legal construction of an exclusionary provision of the policy as follows:

"This insurance does not apply under: * * * (f) Coverage A (Bodily Injury Liability), (1) to any obligation for which the insured or his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law; or (2) *to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured.*" [Emphasis supplied.]

It appears from the pleadings and the undisputed evidence that the family habitation and relationship is as follows: George Gipson, a colored person of mature age, owned a dwelling house of moderate size in which there lived, at the time of the accident complained about, George Gipson, his minor son, Clifford Gipson (the driver of the automobile), and his minor grandchild, whom he had adopted; and also his daughter Mary, her husband, Tommy Royster, and their nine minor children, including the alleged injured child, Joyce Royster. It further appears that such occupancy existed for six or seven years continuously and immediately prior to the alleged accident.

The Roysters occupied the premises of George Gipson rent free and had unrestricted access to the entire house as did the other occupants. They occupied separate bedrooms with their children, while George Gipson and his two sons occupied a separate bedroom which was occasionally shared by one of the Royster boys. They used the living room in common, as well as the kitchen.

George Gipson owned some of the furniture in the house, while the son-in-law and his wife owned pieces of the furniture therein. A bed of George Gipson was used in the bedroom of the Roysters. Essentially there was a mutual enjoyment and use of the furniture and the television in the living room, as well as some coal heaters used to heat the house.

The laundry and cooking for the entire group was done by Mary Royster. She used vegetables from the garden on the premises and groceries purchased by both George Gipson and Tommy Royster which, for convenience, were stored in a chifforobe. There was no effort made to separate the groceries for cooking and they were served on the table in the kitchen to the entire group.

Some of the coal for heating was purchased by George Gipson and some by Tommy Royster, purchases being alternated.

Telephone rent was paid by George Gipson and the electricity for lights by Tommy Royster. The telephone was used by the occupants old enough to need such service, while the lights were not separately metered but used in common.

Tommy Royster, at his own expense, clothed his own family, while George Gipson bought clothes for himself and his boys. The former paid the medical expenses for his wife and children, as did George Gipson for himself and boys.

Tommy Royster disciplined his own children, while George Gipson maintained disciplinary rules for his boys.

■ The aforequoted exclusionary provision is identical in wording with the exclusionary provision of the policy that was the subject of litigation in the case of Holloway v. State Farm Mutual Automobile Ins. Co., 275 Ala. 41, 151 So.2d 774, and the parties here are bound by the legal pronouncements in that case. The decree in the case at bar was rendered before the Holloway case, supra, was decided by this court.

■ We stated in the Holloway case that this court was disposed to the view that the case of Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N.W.2d 855, 50 A.L.R. 2d 108, and other cases cited therein with like import, was sound, and the principles of law there pronounced, so far as they pertained to the issues of the case then under consideration, should be the law of this state.

We think that this case contains logic and reasoning, differentiations and conclusions, that are applicable to the case here presented and should in its essentials be followed by this court as decisive of the exclusionary provision now under attack. We made this same observation in the Holloway case, supra.

For convenience, we quote from the Minnesota case as follows:

"It is obvious that the word (family) is one of great flexibility and has 'many different meanings according to the connection in which it is used.' 35 C.J.S. Family, page 737.

"Here, the word 'family' is used in a clause restricting the liability of an indemnity insurer in an automobile policy. Its obvious purpose is to exempt the insurer from liability to one who would naturally and inevitably be partial to another because of the close filial ties which exist between members of the same *family circle* living in the same household. The same reasons exist for restricting its liability to those not members of such *family circle* whether the injured party is the head of a household, a child or spouse of the head, or simply a member of it. Under these circumstances, the words used should be given that meaning which they ordinarily would have in order to effectuate the obvious purpose intended by the exclusionary clause. The trial court correctly held that plaintiff was within the excluded class." [Emphasis supplied.]

Appellees also contend that the decree of the trial court in the case at bar was free from error because the aforequoted exclusionary provision of the policy was obscure and difficult to find due to the size of the type used to incorporate the exception in the policy. The evidence showed that there was no variation in the size of the type except the introductory part of the policy had bolder printing.

In the absence of a statutory requirement regulating the size and other characteristics of the type employed to state the policy contract or prescribing the color of the printing, an insurance policy or application may be printed in any size of type or color of printing. 29 Am.Jur., Insurance, § 187, p. 579. We are not informed of any such statutory regulation in this state, nor do appellees cite any pertinent statute.

The contention of appellees that the local agent (casually referred to as the general agent) of complainant agreed after the date of the injuries which Joyce Royster allegedly sustained that complainant would defend the suits and that such agreement was binding on complainant is without merit.

We held in the case of Mooridian v. Canal Insurance Company, 272 Ala. 373, 130 So.2d 915(7), that liability not covered by an indemnity insurance policy will not be engrafted on the policy by the mere act of the insurer in assuming control of the litigation and conducting the defense when the beneficiary is sued upon such liability.

We do not think that the mere promise of the so-called general agent of complainant, made after the accident and so far as the evidence shows without additional consideration, would serve to vacate the exclusionary provision and fasten liability on the complainant to defend the suits for the insured.

We are of the opinion and so hold that the trial court was in error, the evidence being essentially without dispute, in decreeing that the exclusionary provision was without legal effect under the evidence and in imposing the duty on complainant to defend the suits and to pay such judgments and costs rendered in the suits filed so far as they are within the limitations of the policy.

The trial court on remandment of this cause will enter a declaratory decree of judgment absolving complainant from any responsibility to defend the suits or to pay any judgment or portions of such judgments as may be rendered in said suits against the insured.

The decree of the trial court is reversed and the cause remanded for entry of decree according to above directions.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by the court as its opinion.

Reversed and remanded.

LAWSON, GOODWYN, MERRILL and HARWOOD, JJ., concur.